Good morning. May it please the Court. My name is Julie Marie Blake. I'm Deputy Solicitor General for the State of Missouri, representing today the Director of the Missouri Ethics Commission, Mr. James Klahr. If Missouri's law is part of a disclosure regime, under the Supreme Court's well-established precedent, this Court is required to uphold it. So the dispositive question in this appeal is whether Missouri's law works as and is part of a disclosure regime. Well, even disclosure, it has to meet exacting scrutiny, right? Correct. Proceed. Opposing counsel asserts that this law is instead a prior restraint, but if there's any way that this Court Help me if you'd speak up a little, or into the mic, or something. Sorry, I'm trying to get a little closer. It's still like a good foot away. Opposing counsel asserts that this law is instead a prior restraint, but if there is any way that this Court can reasonably interpret the law to be part of a disclosure regime, this Court is required to do so under the canon of constitutional avoidance. Here, that interpretation When was the last time the Supreme Court applied that canon in a First Amendment political speech case? I can't recall one off the top of my head. Not for decades, I suspect. That's not a doctrine that's very helpful in particularly prior restraint cases. I disagree. You can make it helpful, but I don't think you have case law that makes it helpful. There's no reason to distinguish the First Amendment from other constitutional cases of great importance involving federalism, involving rights, where the doctrine has been applied. Wait, wait, wait. You can't say that with a straight face. The Supreme Court is, the First Amendment is different. I don't think there's any time in the Supreme Court that says you can't apply the canon. Congress shall make no law restricting speech. It's not like the Fourth Amendment where police officers have to be reasonable. And the Supreme Court has been teaching us that, reminding us of that for years, particularly in prior restraint cases. Well, the Supreme Court has also said that exacting scrutiny allows laws that have a The Supreme Court has also relied on the canon of constitutional avoidance in cases concerning other important rights. Why don't you get off the constitutional avoidance and go to the issues at hand, the specifics at hand? We also believe that the face of the statute itself shows that this is not a prior restraint and that it's subject to exacting scrutiny for that reason. Let me ask you a simple question. It says a committee must be formed. How does that in any way relate to disclosure? Now, there's a later section I know that tells about what you have to disclose and when you have to sign up, but this doesn't talk about disclosure. It doesn't talk about sign-up. It says the committee must be formed by a certain date. That looks to me like it has nothing to do with disclosure. To answer that, I would point you to some of the decisions of other circuits that talk about the components of a disclosure regime. For example, the Catholic Leadership Coalition case from the 5th Circuit says that part of a disclosure regime includes, quote, to formalize its organizational structure and divulge additional information to the government. Do you know what page you're on? Tell me if you know what page you're on, but if you don't It was in our brief. Proceed. These courts, in addition, the 2nd Circuit, the D.C. Circuit, talk about the components of a disclosure regime, and they refer to terms, their reporting requirements, registration requirements Well, all of Chapter 130 has disclosure stuff. I get that. But what about this very section? They're just attacking one thing. This shall be formed. You're painfully familiar with it. Go ahead. And so the other courts talk about three components of a disclosure regime, reporting, registration, and organizational requirements. And what we have here is an organizational requirement. That's what the formation requirement is. And they say that Now, wait, you've got a later section that says you've got to be organized as a committee, a special kind of entity. This says that the body itself must be formed, you know, birth, born, begun. Right. And, you know, you look at the Speech Now case from the D.C. Circuit, and it says that disclosure regimes justify requiring an entity to organize and report as a political committee. I thought the organization is, by your own definitions of those words, that's in later sections, not this section. There's a premise to it. This is a diving board, but it's not the pool. Well, we believe that the formation requirement is part of what an organizational and reporting requirement would be because it's a necessary prerequisite to every other step of the disclosure regime. If you don't have any requirement to form, you don't have to register and you don't have to report. That's not true at all. There's a $500 rule. There's a $5,000 rule. I don't have to tell you all those specific rules. You know about them. Right. So what does this add to those rules? Those rules don't apply and don't work unless you've registered first. That's the necessary prerequisite. Ma'am, you well know that if you do $5,000 in a certain day of the election, you've got to do it very quickly disclosed. If you spend and take over $500, you've got to become a committee. And even one of your laws has individuals in it, that individuals, if they do over $500 in an election, have to do all this stuff. It has nothing to do with when they're formed, right? No, that's not actually the case because Yeah, it is the case. It says all individuals that do over $500 have to register and become a committee. Let me pause and clarify the situation here. The registration requirement is the first prerequisite disclosure before you can file any of the other reporting requirements as to any specific expenditures or contributions. You can't file those for the reports unless you've registered first. That's part of how the law works. And also, as a practical matter, you can't file those reports electronically without the login But counsel, you have certain statutes that say all individuals have to do something. Individuals is not defined in your law. Like, for instance, the $5,000 says any individual that spends over $5,000 has to report it immediately. That's 130.044. And that applies to individuals. I think we're talking past each other here. You just say this is integral, right? That's your real argument. This formation requirement is integral to the rest of the scheme, right? At heart, yes. But it's also an important prerequisite. It's what triggers the first disclosure stage. And as I was going to say a moment ago, you can't file any of these other reports unless you've registered first because you won't have the necessary logins to actually submit any of your other reports as well. Just the way it was written. It didn't have to be written that way. To be sure, the Missouri legislature could have written these laws any number of other ways. I'm just a bit lost. I just heard what you said, and it sounded to me like what you just said is why it was integral. And it seemed to me that at some point you were trying to distinguish between Judge Benton's integral question and something that you find in the regulatory framework that's different. And I didn't follow that, if that's where you were going. I'm not sure I'm following along either at this point. Our main point is that the law itself doesn't work as a prior restraint because it doesn't say you can't speak if you don't form. What it says is form on time. So all you're doing is arguing against our first opinion. Which found that there is objectively reasonable self-censorship by MFA and others in reaction to this statute. And I read your entire brief as urging us to abandon that law of the case. No. It's very important to look at the standard. But stop saying it doesn't chill speech then, because we've held it does. Find another way to reverse. But all you're doing is saying we were wrong the first time, which I understand you and your client believe. I think there are a few different responses to that that I'd like to take in order. So first you have to start with the standard of what this court was looking at last time in the standing. You're mumbling. Or me. It's one of us. I can't pick up your words. There are a few responses to that argument, Judge. First, it's important to look at the standard of review that this court had last time when it issued its justiciability decision. Under Worth v. Selden, what the court's inquiry was, was whether there was an objectively reasonable interpretation of the statute that caused their censorship. I understand. Go on to the next reason. Well, it's very important that that's not law of the case, because it didn't say what was the correct interpretation on the merit. In fact, that was at the heart of the holding was in your footnote 4, you said you're not actually opining on the actual correct interpretation of the statute. The important thing, we believe, is Well, you just jumped. You just jumped from the self-censorship point to interpreting the statute. If the private parties are objectively reasonable in reading the statute in the way that you were urging us not to read it, then there's been a chilling effect. We don't disagree that the reporting and registration requirements incidentally burden speech. That there is a justiciable injury is not at issue. The question is the nature of the injury, the nature of the law, because that determines the level and application of First Amendment scrutiny. Well, okay, so it seems to me the injury, the effect here is that late-forming committees, based on their objectively reasonable self-censorship, are not speaking. Now, that's a pretty severe impact. That sort of cries out for isn't there a better way to do it, i.e., whether you're talking exacting or strict scrutiny. That's the way I see the case. But just because they have prudent reasons to self-censor does not mean that the law in fact operates the way they did. And we think that the law says It is operating that. That's where we've gone beyond Connor, where we've learned that it is operating that way, based on agreements extracted from noncompliers and so forth. Fines and fees. Go ahead. Maybe an example would work. So if you consider the Affordable Care Act case, the NFIB decision, you have in that case a law that in essence says, buy health insurance on time each year or you're going to pay a tax. You've got something similar here where it says, form on time. And then it has a variety of enforcement actions. But neither of the laws say, buy health insurance or you can't buy health insurance again this year. Nor does this law say, form on time or you can't speak at all this year. Instead, both of them lead to certain consequences. So in the Affordable Care Act context, someone could say, look, I'm choosing not to buy health insurance now. I'll pay the tax. Maybe I'll pick it up halfway through the year. The same thing is true in the statute here. You've got to be a committee. You told me earlier, and you're mostly right. You've got to be committed to doing anything under this law. And it says the committee has to be formed. And you've got to be a committee. That's the rest of the regime, as you well know, all different kinds of committees, to do anything. But you can form a committee late if you accept, in this case, the analogy to the tax. You can still speak. You can still form. We think that the statute does not say Because you have a generous director and a generous commission and a good old person's network to let you do that. I wouldn't say it's mere generosity. I think it's the fact that the commission takes the Supreme Court's decision in Bilotti seriously and that we understand the legislature to have taken Bilotti seriously. Bilotti, as you know, says that you cannot cap or restrict speech relative to a ballot initiative, which is, of course, what campaign committees are limit cap or limit that speech in any way, they reasonably interpret this law to only be part of a reporting and registration regime hinged to timeliness, not to whether you can speak or form at all, which is a different way of getting at the canon of constitutional avoidance, which I know that Judge Logan said to move off of. But the point is that in Missouri, officials guide their actions by concern to avoid the statute here. If there are no further questions, I will reserve the rest of my time for rebuttal. Your Honor, as I may please the Court, my name is Steve Hursting on behalf of Appalachian Missourians for Fiscal Accountability. You've heard the Appellant's counsel say that the to Missouri's disclosure regime. And relatedly, the government contends that a requirement to form within 30 days of the election, when coupled with the requirement to register the committee by filing a statement of organization within 20 days of having formed, provides the commission with eight days before the election to process the committee's information and prepare to administer the committee's future disclosures. Missouri's mistake, however, in creating its statutory scheme is to focus on setting a to require a group to form sooner than its members would choose to form on their own or in First Amendment parlance sooner than they would choose to associate politically. Let me ask you a question. The termination has not taken place, right? You're here in court, so MFA has not terminated, right? Under Missouri law, we have, Your Honor, our Treasurer, Michael Grote, did file a termination report. And under Internal Revenue Law 527, we continue as an organization. Okay, so you continue as the Federal entity, but you say you have terminated as a campaign committee? Yes, Your Honor. Okay, so that part of the law is enforced, and I assume that all parts of that are enforced. But you still exist as the 527. Go ahead. Thank you. What Missouri should have done to obtain its objective is sped up the registration deadline after the committee, the citizens who formed it, chose to form on their own. With regard to footnote 4 in this Court's prior opinion, and I'll refresh the Court's recollection, the Court says the Commission stresses Conner's reference to the continuing committee provision as a registration deadline. MFA, on the other hand, believes the similar campaign committee provision is a formation deadline, and these labels summarize the Party's on the merits. We want to say that with regard to that issue, there's no question that for campaign committees, the 30-day deadline is a formation deadline, not a registration deadline. According to the plain language of Section 130.118, which defines the term campaign committee, the, quote, sole purpose, close quote, of a campaign committee is to, quote, support or oppose one or more particular ballot measures in an election, close quote. A campaign committee, by definition, shall terminate 30 days after the end of an election, close quote, or pay down its debt, and when paying debt, shall not speak. Campaign committees do not continue as other entities do under Missouri law. Each and every campaign committee must form anew, not just register anew, for each successive election cycle. Indeed Well, now, be careful, because as a 527, you were formed once. Aren't you approving too much now? Within Missouri law, Your Honor, my understanding is we have to form every election cycle, which means a decision to engage in a Missouri election. And indeed, if that were not the circumstance So you are saying that the subject there, the such committee, is only state law, such committee? Yes, that's our understanding, Your Honor. Okay, proceed. Indeed, if the requirement were not to form anew, the commission would not get the eight-day window it seeks by playing the statement of committee, the statement of organization off of the formation requirement. The problem with the formation deadline is In your brief, you say, well, don't worry about Conner, because the plaintiff in Conner had been in existence for many years. Are you then suggesting that the import of the district court's decision is that it only applies to brand new, you know, committees? Our understanding, Your Honor, is that Well, you know, only somebody who is 527 is formed in the 30 days before the election? That's certainly the obvious case, Your Honor. There is a point in which Wait a minute. I asked you a question. Does your brief mean that that's the way you are urging us to interpret the district court's opinion? I think clearly not. Your Honor Therefore, I read that passage in your brief. I said that's nonsense. There is such a thing as a continuing committee under Missouri law, and I don't have the requirements of a continuing committee committed to memory, but a campaign committee is new and it renews every cycle. So, yes, an ongoing organization would eventually, under Missouri law, become a continuing committee. But you are not a continuing committee? Now you just made it worse for me. We are not a continuing committee. We have not taken a step toward that. You are not a continuing committee? Under Missouri law. Okay, go ahead. But what does this decision apply to? This decision Under sub 8. Did you say on sub 8? Yes, sub section 8 of 13-11. Oh, yes, thank you. Go ahead. Thank you, Your Honor. It applies certainly to new campaign committees, ones that are formed for ballot committee purposes. It also applies to any organization that has not yet become a continuing committee under Missouri law and yet wants to consider participating in future ballot measure elections and other elections. So why is a continuing committee not subject to the 30-day rule? Or the 20-day? My understanding is that a continuing committee is still subject to a 30-day rule. No, it is a 60-day rule. It used to be 60. I thought it used to be 60. It was 30 at the time of Congress. It doesn't matter, but they are subject to a different 60 now, yes. That actually gets to the nature of this provision. But, counsel, they only face that one time because they are continuing. They do it once and then they are around for 60 years. We have only had the campaign finance for 40 years, but it is the same difference. That is right, yes. And the Missourians for Fiscal Accountability has not met the continuing committee requirements. There is no question, by the way, that for campaign committees, the 30-day deadline is a formation deadline. And I want to point out, well, actually I want to move to this point. The government concedes in its own brief that a group of individuals who decide less than must at best pay a fee in order to engage in that speech. And that fee, of course, is accompanied by an acknowledgment that the group has violated Missouri law. If the group was aware of the requirements to form 30 days prior, just as MFA was, that group can be held criminally liable, tagged with a misdemeanor. Whether this court characterized the provision as a prior restraint or as a blackout period and the district court held it was both. What Missouri could have done to accomplish its objective, that is, for groups who choose to form late, is it could have set a formation deadline. Rather than set a formation deadline, it could have sped up its registration deadline, as South Dakota has done. Indeed, in South Dakota, political committees formed within 30 days prior to the election must submit their registration within 48 hours of formation. So the key point here is that the decision of formation is in the hands of the citizens themselves. It is not being forced upon them by the legislature. Missouri's scheme makes the mistake the Supreme Court warned about in Buckley v. Vallejo. Timelines for disclosing speech must not predate the speech that is made. Justice formation deadlines cannot predate the group's decision to form a committee on its own. In upholding federal post-speech disclosure requirements, not disclosures prior to speech, the Buckley court noted that the disclosure requirements at issue were minimally restrictive and expressly contrasted them with, quote, the prior restraint in the requirements considered in cases like Thomas v. Collins, a Supreme Court case of 1945. You've heard the government argue that the 30-day formation requirement is part of a It also says it's not a prior restraint. It says the fee is optional. Of course, the record contradicts all those things. The government actually concedes that there is an enforcement action by the commission, and it was established by the district court below. That administrative process requires a $1,000 fine and a public reprimand for any group that forms late, even if the information needed to further disclosure is already provided to the commission by the 29th day through the statement of organization. And contrary to the government's argument, the fine is not a penalty that, quote, the offending committee may choose to accept. On the contrary, it is mandatory. This leads me to the second characterization by the government, that Section 130.8 is part of a larger disclosure regime because it incentivizes committees to form early so the commission can have the committee's pertinent information eight days before the election. What the government misses is so-called disclosure provisions that trigger before a committee either speaks or forms is not rationally related to disclosure. The government has said that the formation requirement incentivizes committees to form early so that the commission can have eight days to administer disclosure. Therefore, it is a disclosure provision. What the government misses is that the so-called disclosure provisions that trigger before a committee either speaks or forms is not related to disclosure. What is more, the record establishes that even if a committee were to form 29 days prior to the election and registered the committee by filing a statement of organization on the same day, the committee would still face a $1,000 fine for failing to form within 30 days prior. As the district court suggested, the 30-day provision does nothing to further it. But it is only the impact on contributions and expenditures that affect speech, right? That is right, Your Honor. Because if all they said is you have to register within this time period or you might face a fine, period, if the statute stopped there, we wouldn't be here, would we? We wouldn't be here under prior restraint, Your Honor. Absolutely not. That is why we are here. We might be here under disclosure, yes. Under prior restraint, we absolutely would not be here, yes. I guess you are arguing about whether it is direct or indirect or nonexistent, the impact on speech of the registration. We believe it is both a prior restraint, which would be, at some level, indirect. But why? And the district why. Tell me again. I know we said the first time around, but tell me again why it is a prior restraint. Because the inescapable effect, if not the overt intent of Missouri's requirement to form 30 days prior to an election for which the committee accepts contributions or makes expenditures is an interorum provision that keeps groups of late deciding speakers. You are not giving me the why. Because they are scared. They read the statute. It says we needed to be formed 30 days ago or we are going to face a fine. So it says, must be formed. Well, we will speak and pay the fine. Speak and pay the fine is precisely what the Supreme Court has said is unconstitutional, Your Honor, under Watchtower Bible and Thomas and New Commons. You pay the fine whether you speak or don't speak. That is not true, Your Honor. Well, if the only punishment is for the registration. It seems to me that the issue here is whether the remedial regime makes each expenditure or each contribution at the time when you are not properly registered subject to additional penalties. If that is not the case, then I don't understand the statute triggers if you make expenditures or if you accept. I don't understand the blackout. Yes. With regard to the blackout, the District Court found No, don't explain the blackout. Explain why the, again, I thought I understood the first time around and this, you know, how many years ago. Yeah. Because Judge Benton explained it to me. Now both of you are managing to confuse me completely. It is a blackout for these reasons. And it is best understood by a simple example. Under Section 130.118, every committee must terminate and go silent after the last election. So imagine two groups of citizens now considering whether they want to speak in future elections and therefore form a committee. They both decide to form and they both form late. Only the committee that makes expenditures or accepts contributions, that is, speaks or takes on the resources necessary to speak, will be punished by the plain language of 130.118. The choice then I am not sure I understand that. Because the entire provision turns on a committee that makes expenditures or accepts contributions. Okay. Yeah. Okay. With regard to constitutional avoidance, I believe the Court covered that earlier. With regard to the idea that the registration deadline and whether it offends the First Amendment, excuse me, the formation deadline and whether it offends the First Amendment was adjudicated in Connor. It was not. Connor decided merely that the question was not ripe. Indeed, had the Connor Court already adjudicated the constitutional question? How much of a record did you make in the district court? Because Connor had no record. We thought on the previous opinion there was some record. Quite a bit, Your Honor. The MEC established that all committees are fined $1,000. All committees receive a reprimand. All committees are fined not only for having formed late but for not filing a timely statement of compensation. Even though many of the penalties are stayed, like the previous opinion says. Correct. Percent of the penalties are stayed. But they are all there. They are all operable and they all apply. Okay. Thank you. If there are no further questions, Your Honor, I appreciate it. Thank you. If I can make three quick points. First, on the very last point you're talking about, Judge Benton, the penalty scheme has six different enforcement options. So it's not always you have to have a mandatory fee by the nature of the law. And, in fact, the verified answer Mr. Clark submitted, he mentioned that in most cases there isn't actually a situation where their fee is imposed as a mandatory matter. Instead, in many filings, they're simply accepted late and the disclosures are accepted late without any problem. Second point, I'd like to go to Judge Loken's question. The medial regime does not make each expenditure or each contribution a new fee or other penalty from the commission. Instead, the violation is the failure to register on time, the failure to report on time. However much speech they do, however much or however little, does not affect the nature of the fee. Instead, if you simply don't file the report. They make no speech. They have to terminate at the election, after the election. And they make no speech, obviously there's no report. Nothing to report. Right. You can file a statement of non-activity in that case. And the most important part is if this court affirms the lower court, the real blackout period here before the election will be a blackout period on voter information and transparency, not a blackout period on speech. The commission allows people to speak as much as they want so long as they file reports so that the public can understand where the money is coming from. Especially with early voting starting six weeks before the election. And major ballot initiatives coming up this fall likely to include medical marijuana. Which may be taken off the week before the election, counsel. Which may. Four or five times in recent years. Which is why the commission. Seven days before the election. Proceed. Which is why the commission under Bilotti does not prevent anyone from speaking and does not assess fees based on the amount of their speech. Right to work, lobbyist periods. All of that. It's very important that the voters have the opportunity to get this information before the election. That's the nature of the state interest justifying this law. Unless this court has further questions, we ask the court to reverse the decision below. Thank you. Thank you, counsel. The case has been well briefed and argued again. And we'll take it under advisement.